

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Joab Campbell
County Attorney
Schleicher County
El Dorado, Texas

Dear Sir:

Opinion No. O-4436
Re: County clerks - Fees of of-
fice - commissioners' courts.

Your request for opinion has been received and
carefully considered by this department. We quote from
your request as follows:

"The County Clerk of this county, pursuant
to his contract with the Commissioners Court,
and at his own cost and expense, for the past
year or more, has been preparing a new set of
corrected and improved indexes of all the rec-
ords kept in his office, for a compensation
specified in such contract, to be paid to him
quarterly out of county funds, as the work pro-
gressed.

"About one third of the work was completed
during the year, 1941, for which the court paid
him about one third of such agreed compensation.
It being understood that the clerk was to pre-
pare such indexes along at his spare time and
not to interfere with the performance of his
official duties.

"This county is on the fee basis system
and the County Clerk is paid a ex-officio sal-
ary.

"The County Clerk contends, as does his
attorney, that such compensation was paid him
for services rendered the county out side of
his official duties, was not a proper fee of
office and should not be accounted for in ar-
riving at the maximum fees allowed him under the
law.

Honorable Joab Campbell, Page 2

"Should the County Clerk of this county account for such compensation paid him, in arriving at the maximum fees allowed him under the law? Was said Commissioners Court authorized to make such contract?"

Articles 1941, 1942, 1945, 3931 and 3932, Vernon's Annotated Texas Civil Statutes, read as follows:

"Art. 1941. Recorders

"They shall be ex-officio recorders for their several counties, and as such shall record in suitable books to be procured for that purpose all deeds, mortgages and other instruments required or permitted by law to be recorded; they shall be the keepers of such record books, and shall keep the same properly indexed, arranged and preserved."

"Art. 1942. Custody of records

"They shall be keepers of the records, books, papers and proceedings of their respective courts in civil and criminal cases and in matters of probate, and see that the same are properly indexed, arranged and preserved, and shall perform such other duties and in that behalf as may be by law imposed on them."

"Art. 1945. Other dockets, indexes, etc.

"The clerk shall keep such other dockets, books and indexes as may be required by law; and all books, records and filed papers belonging to the office of county clerks shall at all reasonable times be open to the inspection and examination of any citizen, who shall have the right to make copies of the same."

"Art. 3931. County clerk: preserving records

"At each term of his court the county judge shall inquire into and examine the amount of labor actually and necessarily performed by the

clerk of his court in the care and preserva-
tion of the records of his office, in making
and keeping necessary indexes thereto, and
other labor of a like class, and allow said
clerk a reasonable compensation therefor, not
to exceed the fees allowed him by law for like
services, and not to exceed one hundred dol-
lars annually, to be paid out of the county
treasury upon the sworn account of such clerk,
approved in writing thereon by the county judge."

"Art. 3932. County clerk: ex-officio serv-
ices

"For all ex-officio services in relation
to roads, bridges and ferries, issuing jury
script, county warrants, and taking receipts
therefor, services in habeas corpus cases, mak-
ing out bar dockets, keeping records of trust
funds, filing and docketing all papers for Com-
missioners' Court, keeping road overseers' books
and list of hands, recording all collection re-
turns of delinquent insolvents, recording county
treasurer's reports, recording reports of jus-
tices of the peace, recording reports of animals
slaughtered, and services in connection with all
elections, and all other public services not
otherwise provided for to be paid upon the order
of the Commissioners' Court out of the treasury,
the county clerk shall receive such sum as the
Commissioners' Court may determine under the
provisions of Article 3895, to be paid quarter-
ly. No county clerk shall be compelled to file
or record any instrument of writing permitted
or required by law to be recorded until the pay-
ment or tender of payment of all legal fees for
such filing or recording has been made. Nothing
herein shall be held to include papers or in-
struments filed or recorded in suits pending
in the county court."

Article 3930, Vernon's Annotated Civil Statutes,
reads in part as follows:

"Clerks of the county court shall receive
the following fees:

". . ."

Honorable Joab Campbell, Page 4

"Transcribing, comparing and verifying
record books of his office, payable out of the
county treasury upon warrant issued under the
order of the Commissioners' Court, for each
100 words. . .          .10."

The case of Tarrant County vs. Rogers, 125  S.W.
592 (Sup. Ct. 135 S. W. 110) held that the Commissioners'
Court had no authority to pay the county clerk a certain
sum for work in indexing records, and hence the county was
not bound by said agreement and could recover from the
clerk the amount paid him for doing the work in excess of
what it actually cost.  We quote from the court's opinion
in said case as follows:

"The court in its main charge, with ref-
erence to extra work done on the indexes, in-
structed the jury as follows: 'You will charge
him (meaning Rogers) with three-fourths of
$7,576.75, the amount paid Rogers by Tarrant
County for reindexing deeds, over and above the
expenses paid out by Rogers for that work.' The
extra work referred to by this charge meant the
work that was done by Rogers under the direction
of the commissioners' court upon the indexes.
This work consisted in placing on the margin
of the reports opposite the deeds so recorded
a brief description of the property conveyed
by the instrument, so that a person examining
the record could tell by looking at this nota-
tion whether the instrument to which it referred
conveyed the property for which he was searching.
Relative to this work, Rogers testified that he
was instructed to do it by the commissioners'
court; that he had never seen any order direct-
ing him to do the work; that Butler, his prede-
cessor, had commenced the work; that when he
went into the office the commissioners direct-
ed him to go on with it; that he finished it
up as directed by them, and paid out for clerical
aid in doing the work the sum of $6,023; that he
kept the difference between that amount and the
amount allowed him by the commissioners' court
for the same, which amount so kept by him was
$7,364.75, which he retained as his compensation
therefor; that there was an understanding between

himself and the commissioners that he was to have
five cents for the entry of each description that
was made on this index, and, at five cents for
each description, said work amounted to the sum
of $13,587.75; that the amounts paid him by the
county for putting these descriptions on the in-
dex were paid by warrant on the county, drawn by
the commissioners' court; that he declined to do
the work when first requested by the commission-
ers, on the ground that it was going to mix up
the office work considerably, as it took about
20 men to do this extra work; and, further, that
he did not care to do it, if they were going to
regard it as a part of the duties of the office,
and as a part of the office fees; whereupon the
commissioners told him that they did not expect
anything of that kind, but to go ahead and finish
it up as Butler had commenced it, as they did
not want it left incomplete.

"Appellant contends that the charge above
referred to was erroneous, in that the work so
done by Rogers upon said indexes was not fees of
office, and hence the county was entitled to
recover of him the entire amount, to wit, $7,562,
remaining after paying for the actual expense of
doing the work. This charge was evidently given
by the court upon the theory that the clerk was
entitled to one-fourth of said sum as official
fees.

"After a careful examination of the stat-
utes relative to the duties of clerks as to
preservation and keeping of the records and
indexing the same, we fail to find any provi-
sion therein requiring them to make marginal
notations of the description of the land convey-
ed by the instruments recorded, such as was
done in this instance, and hence conclude that
the work done by said clerk, while it may have
been a great convenience to the public, still
was not such work as the commissioners could re-
quire him to do. It therefore did not fall
within this category. Nor do we think that
appellee could rely, as he undertakes to do,
upon the contract made with the commissioners'

court, and recover the whole or any portion of
the balance remaining after deducting the ex-
penses for having the work done, because the com-
missioners' court had no authority, in our judg-
ment, to make any such contract with him; and,
if without authority to do so, the county was
not bound by their action in undertaking to make
a contract with him for such service. See Tar-
rant County v. Butler, 35 Tex. Civ. App. 421,
80 S.W. 656; also Bell County v. Felts et al,
120 S. W. 1065. Nor is the county estopped in
any manner from asserting that said contract was
unlawful, and recovering the amount so paid out,
based thereon. See Baldwin v. Travis County,
40 Tex. Civ. App. 149, 88 S. W. 480, and Delta
County v. Blackburn, 100 Tex. 51, 93 S.W. 419."

We quote from the case of Tarrant County v. Butler,
80 S.W. 656:

"If the $8,000 allowed appellee Butler for
making indexes, etc., during the last fiscal
year of his term, constituted fees of office,
within the meaning of the fee bill, then, of
course, the county was entitled to have this
item considered in determining the amount of
excess due it. The fee bill requires 'all fees
collected during the fiscal year' etc., to be
accounted for, and fixes a maximum amount of
fees of 'all kinds' which may be retained. It
is insisted, however, that the extra services
thus compensated were not official; that compen-
sation for making the indexes was a matter pure-
ly of contractual right. We do not think so. As
we have observed, the Constitution confers gen-
eral powers upon the Legislature to prescribe the
duties of county clerks, and by reference to Rev.
St. art. 1143, and following, it is apparent that
the Legislature has made it the duty of the county
clerks to keep and preserve the records of their
offices, and to keep proper indexes of all rec-
ords thereof. The duty to safely keep and
preserve the records necessarily confers the
right to exclude all nonofficials from inter-
ference therewith. The commissioners' court
would be without power, without consent of the

clerk, to authorize a stranger to take possession of the records and perform the services contemplated in the work to which the contract of the commissioners' court related. The duty to keep and preserve the indexes also necessarily implies the duty to transcribe, renew, or make proper indexes when necessary, as was alleged in appellant's petition; and the compensation therefor seems to have been expressly provided, as will be seen from the following quotation from article 2457, Rev. St. 1895, viz., 'transcribing, comparing and verifying record books of his office, payable out of the county treasury upon warrants issued under the order of the commissioners' court, for each 100 words ten cents', which seems not to have been affected by the fee bill, as will be evident by an inspection of the twenty-sixth section thereof, providing that laws not in conflict with the act are not affected. For aught that appears, the $8,000 allowed appellee Butler for making new indexes was but the sum total of fees to which he was entitled therefor under existing law, and the settlement indicated by the order hereinbefore referred to amounted only to the ascertainment of this fact. But however this was, we think the $8,000 was official fees, within the meaning of the fee bill, for which Butler should be required to account."

You are respectfully advised that it is the opinion of this department:

1. The commissioners' court has no authority to contract to pay the county clerk a certain sum for "preparing a new set of corrected and improved indexes of all the records kept in his office." (See Tarrant County v. Rogers, 125 S. W. 595)

2. The commissioners' court has authority to allow the county clerk fees of 10 cents per 100 words for "transcribing, comparing and verifying record books of his office" as provided for by Article 2930, V.A.C.S. Such fees must be accounted for by the clerk as fees of office. (See Tarrant County v. Butler, 80 S. W. 659)

3. The county judge has authority to allow the county clerk for his labor actually and necessarily performed in the care and preservation of the records of his office, in making and keeping necessary indexes thereto, and other labor of a like class, a reasonable compensation therefor, not to exceed the fees allowed him by law for like services, and not to exceed one hundred dollars annually. (See Article 3931, V.A.C.S.) Such compensation is ex-officio compensation and should be accounted for by the clerk in the determination of his compensation under Articles 3883 and 3891, V.A.C.S. Also in this connection see the case of Anderson County vs. Hopkins, 187 S. W. 1019.

4. The commissioners' court has authority to allow ex-officio compensation to county clerks under the provisions of and within the limitations prescribed by Articles 3895 and 3932, V.A.C.S.

Trusting that this satisfactorily answers your inquiry, and with best regards, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Wm. J. Fanning
Assistant

APPROVED FEB 27, 1942

WJF:LM

